*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* NMH,

UNPUBLISHED
January 12, 2023

PEOPLE OF THE STATE OF MICHIGAN,

Appellee,

v

No. 355983
Calhoun Circuit Court

NMH,

LC No. 2020-002015-PP

Respondent-Appellant.

Before: BOONSTRA, P.J., and GADOLA and HOOD, JJ.

PER CURIAM

Respondent appeals as of right the trial court's order finding her in criminal contempt for violating a personal protection order (PPO), MCL 600.2950(23) (providing that an individual who fails to comply with a personal protection order is subject to criminal contempt, punishable by up to 93 days in jail and a $500 fine); 600.1701 (providing list of acts punishable for contempt). The trial court held the violation hearing via video conference. On appeal, respondent argues that she is entitled to a new hearing because, although she appeared and participated via video, the trial court did not advise her of her right to be physically present and she did not waive her right to be physically present. We disagree and affirm the conviction and sentence.

## I. BACKGROUND

In September 2020, petitioner obtained a PPO against respondent. In October 2020, petitioner filed a motion and order to show cause in Calhoun Circuit Court. The motion alleged that respondent violated the PPO by calling his cell phone three times.

On November 30, 2020, the trial court held a hearing via Zoom video conference. At the beginning, the court stated that respondent was present in the courtroom with her attorney. The parties agree, and the record reflects, that this was a misstatement. For example, the court told

both petitioner and respondent to unmute themselves prior to their testimony. At a minimum, it appears that neither was physically present in the courtroom.

The court never advised respondent of her right to be physically present for the hearing. Respondent, through counsel, was able to cross examine petitioner via video conference. Neither respondent, nor the court as the fact finder, was in the same room as petitioner when he testified. Although several portions of the transcript are indiscernible, it is unclear if this is a result of the hearing being held via video conference.

At the end of the hearing, the trial court found that respondent violated the PPO. The court imposed a suspended sentence of 15 days in jail and a $250 fine. Like the remainder of the hearing, the court imposed the sentence via video conference.

After the court advised respondent of her appellate rights, she requested that the court appoint appellate counsel. Through counsel, respondent filed a motion to vacate the violation order, which the court denied. This appeal followed.

## II. LAW AND ANALYSIS

### A. WAIVER AND FORFEITURE

At the threshold, the prosecution argues that respondent waived her argument regarding physical presence, precluding appellate review. We disagree. "Waiver is different from forfeiture." *People v Carines*, 460 Mich 750, 763 n 7; 597 NW2d 130 (1999) (quotation marks and citation omitted). Waiver occurs when one intentionally relinquishes or abandons a known right. *People v Davis*, 509 Mich 52, 64; ___ NW2d ___ (2022) (citations omitted). And one who waives an issue cannot later seek appellate review of that issue. *Id.* (citations omitted). To waive a known right, a party must clearly express their satisfaction with a trial court's decision. *Id.*, quoting *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). "In contrast, a party merely forfeits rather than waives an issue when that party fails to timely assert a right." *Id.* (citation omitted). A defendant or litigant's participation in a potentially defective hearing does not amount to a waiver. See *id.* at 65.

Here, respondent's failure to object and subsequent participation in the remote hearing resulted in forfeiture, not waiver, of her right to be physically present during the hearing. See *Davis*, 509 Mich at 65, citing *People v Vaughn*, 491 Mich 642, 663-664; 821 NW2d 288 (2012) (holding that failing to object to an improper courtroom closure results in forfeiture, not waiver, of the public-trial right). Here, there was nothing to suggest that respondent knew she had a right to be physically present during the hearing. The trial court did not advise her of this right. And neither she nor her counsel indicated that they were waiving the right. She merely participated in the proceedings without objection. This amounts to forfeiture, not waiver.

### B. RIGHT TO PHYSICAL PRESENCE DURING PPO VIOLATION HEARING

After determining that respondent did not waive this argument, we consider whether the Zoom PPO violation hearing violated her right to be physically present. We conclude that an error occurred, but respondent has failed to establish that the error prejudiced her.

1. PRESERVATION AND STANDARD OF REVIEW

To preserve an issue for appellate review, a party must raise the issue before the trial court, and the trial court must address and decide the issue. See *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). To preserve for review by this Court a constitutional error claim that implicates a defendant's due-process rights, a party must raise the issue in the trial court, at a time when the lower court has an opportunity to correct the error. *People v Anderson*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 354860); slip op at 4, app held in abeyance ___ Mich ___; 978 NW2d 835 (2022) (citations omitted); see also *People v Pipes*, 475 Mich 267, 277; 715 NW2d 290 (2006). Here, respondent did not raise the issue of her physical presence during the hearing and did not object to appearing remotely via Zoom. Therefore, she failed to preserve the issue for appellate review. See *Anderson*, slip op at 4.

Respondent argues, without supporting authority, that she preserved this issue when she moved for the trial court to vacate her violation. We are not persuaded. The purpose of the preservation requirement is to encourage litigants "to seek a fair and accurate trial the first time around" without the need for further legal proceedings. See *Carines*, 460 Mich at 761 (quotation marks and citation omitted). Generally, a party should "raise objections at a time when the trial court has an opportunity to correct the error, which could thereby obviate the necessity of further legal proceedings and would be by far the best time to address a [litigant's] constitutional and nonconstitutional rights." *Anderson*, ___ Mich App at ___; slip op at 4, citing *People v Grant*, 445 Mich 535, 551; 520 NW2d 123 (1994). Here, had respondent objected to the remote proceedings at the start of the hearing, the trial court could have immediately adjourned the hearing, and this appeal might have been avoided. See *id.* Respondent's argument is similar to one stating that raising an issue for the first time in a motion for reconsideration is sufficient to preserve the issue, which is not true. See *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009). Accordingly, this issue is unpreserved. See *Carines*, 460 Mich at 761; see also *Cameron*, 291 Mich App at 617.

This Court reviews unpreserved or forfeited issues for plain error. *In re Contempt of Henry*, 282 Mich App 656, 666; 765 NW2d 44 (2009). In order to receive relief under the plain-error rule, a defendant—or contemnor—bears the burden of proving that: (1) an error occurred, (2) the error "was plain, i.e., clear or obvious," and (3) "the plain error affected substantial rights, i.e., prejudiced defendant by affecting the outcome of the proceedings." *Anderson*, ___ Mich App at ___; slip op at 4 (citations omitted). If a contemnor satisfies those three requirements, "we must determine whether the plain error seriously affects the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence." *Id.*

The Court reviews for an abuse of discretion a circuit court's decision to hold a party in contempt; however, we review related constitutional issues de novo. *In re Contempt of Dudzinski*, 257 Mich App 96, 99; 667 NW 2d 68 (2003).

2. APPLICATION

Regarding the first prong of the plain-error analysis, here, there is no real dispute that the error occurred. Although Michigan courts have yet to address directly the extent of a defendant's right to be physically present for an evidentiary hearing and sentencing on contempt for a PPO

violation, the parties appear to agree that respondent had such a right. We hold that in a criminal contempt proceeding for an alleged PPO violation, a respondent has both a constitutional right to be physically present and a right existing under the Michigan Court Rules.

Contempt is a quasi-criminal proceeding that can be either criminal or civil in nature. *In re Contempt of Dougherty*, 429 Mich 81, 91; 413 NW2d 392 (1987). It can be difficult to distinguish criminal and civil contempt, but this distinction is critical because criminal contempt proceedings require some, though not all, of the due process safeguards of an ordinary criminal trial. *Id.*[1] The difference between civil and criminal contempt is also found in their purpose: civil contempt seeks to coerce compliance with court orders; criminal contempt seeks to punish misconduct. See *id.* Although the Michigan Court Rules contemplate that contempt for violating a PPO can be civil or criminal, see MCR 3.708(H)(3) (providing the burden of proof for both civil and criminal contempt), where, as here, it seeks to punish for past conduct, such as the telephone calls, its nature is criminal, not civil. See *TM v MZ*, 501 Mich 312, 315; 916 NW2d 473 (2018); see also *Dougherty*, 429 Mich at 91-92 (noting the difference between civil and criminal contempt); *Mayes v Livingston*, unpublished per curiam opinion of the Court of Appeals, issued November 18, 2010 (Docket No. 290533) (noting that proceedings under MCL 600.2950 were criminal contempt). MCL 600.2950 governs domestic-relationship PPOs. See *TM*, 501 Mich at 315. A person who fails to comply with a PPO is subject to the criminal contempt powers of the court. See MCL 600.2950(23). A petitioner, or the prosecutor standing in the petitioner's shoes, has the burden of proving a respondent's guilt of criminal contempt beyond a reasonable doubt at a show-cause hearing. See MCR 3.708(H)(3).

Because contempt for violation of a PPO is criminal in nature, a respondent has a constitutional right to be present for the evidentiary hearing and sentencing. See *Anderson*, ___ Mich App ___; slip op at 5. " 'Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both.' " *People v Joseph*, 384 Mich 24, 33; 179 NW2d 383 (1970), quoting *Bloom v Illinois*, 391 US 194, 201; 88 S Ct 1477; 20 L Ed 2d 522 (1968).

In *People v Mallory*, 421 Mich 229, 247; 365 NW2d 673 (1984), our Supreme Court explained that, in the normal criminal context,

> [a] defendant has a right to be present during the voir dire, selection of and subsequent challenges to the jury, presentation of evidence, summation of counsel,

---

[1] Contempt can also be direct or indirect. *United Mine Workers v Bagwell*, 512 US 821, 827 n 2, 114 S Ct 2552; 129 L Ed 2d 642 (1994) ("Direct contempts that occur in the court's presence may be immediately adjudged and sanctioned summarily, and, except for serious criminal contempts in which a jury trial is required, the traditional distinction between civil and criminal contempt proceedings does not pertain.") (citations omitted); see also *In re Contempt of Henry*, 282 Mich App 656, 675; 765 NW2d 44 (2009) ("When a contempt is committed in the immediate view and presence of a court and immediate corrective action is necessary, the court may summarily punish it."). In the context of contempt for an alleged PPO violation, such as this case, the contempt is indirect. Because this case involves indirect contempt, summary proceedings and a contemnor's diminished rights at such proceedings are not at issue here.

instructions to the jury, rendition of the verdict, imposition of sentence, and any other stage of trial where the defendant's substantial rights might be adversely affected.

Recently, in a COVID-19 related case, this Court reiterated that a criminal defendant has a constitutional right to be present at any stage of a trial during which substantial rights might be adversely affected. *Anderson*, ___ Mich App at ___; slip op at 5, citing *Illinois v Allen*, 397 US 337, 338; 90 S Ct 1057; 25 L Ed 2d 353 (1970).

Michigan Court Rule 3.708 provides the hearing procedures for alleged PPO violations. Under MCR 3.708, a respondent has the right to be present at a PPO violation hearing, to present evidence, and to examine and cross-examine witnesses. See MCR 3.708(H)(2). MCR 3.708(H)(2) provides as follows:

> The respondent has the right to be present at the hearing, to present evidence, and to examine and cross-examine witnesses. As long as the respondent is either present in the courtroom or has waived the right to be present, on motion of either party, and with the consent of the parties, the court may use telephonic, voice, or videoconferencing technology to take testimony from an expert witness or, upon a showing of good cause, any person at another location.

MCR 3.708(I) provides as follows:

> The use of videoconferencing technology under this rule must be in accordance with the standards established by the State Court Administrative Office. All proceedings at which videoconferencing technology is used must be recorded verbatim by the court.

These rules were affected by our Supreme Court's COVID-19 related administrative orders. Administrative Order No. 2020-2, 505 Mich lxi-lxii (2020), ordered circuit courts, "[t]o the extent possible and consistent with MCR 6.006 and a defendant's constitutional and statutory rights," to conduct a number of "hearings using two-way interactive technology or other remote participation tools[.]"

Administrative Order No. 2020-6, 505 Mich xci-xcii, provides, in relevant part, as follows:

> On order of the Court, pursuant to 1963 Const, Art VI, Sec 4, which provides for the Supreme Court's general superintending control over all state courts, the Court authorizes judicial officers to conduct proceedings remotely (whether physically present in the courtroom or elsewhere) using two-way interactive videoconferencing technology or other remote participation tools under the following conditions:
>
> • any such procedures must be consistent with a party's Constitutional rights;
>
> • the procedure must enable confidential communication between a party and the party's counsel;

• access to the proceeding must be provided to the public either during the proceeding or immediately after via access to a video recording of the proceeding, unless the proceeding is closed or access would otherwise be limited by statute or rule;

• the procedure must enable the person conducting or administering the procedure to create a recording sufficient to enable a transcript to be produced subsequent to the activity.

While this order is in effect, and consistent with its provisions, all judges in Michigan are required to make a good faith effort to conduct proceedings remotely whenever possible. Although adjournments are permitted when necessary, courts are directed to implement measures to ensure all matters may proceed as expeditiously as possible under the circumstances, given the particular public health conditions in each locality and the technology resources and staffing situations in place at each court.

Here, the trial court erred when it conducted the evidentiary hearing via video without first advising respondent of her right to appear in person and making the appropriate waivers on the record.

Regarding the second prong of the plain-error analysis, we find that the error was plain, which is to say it was clear and obvious. Respondent had a clear right to be present for the proceedings, in particular the evidentiary hearing and sentencing. Similar to other criminal proceedings, the administrative orders that provided for expanded use of video conference technology in response to COVID-19 did not abrogate those rights. The trial court's failure to advise respondent of her right to in-person proceedings and to hold the hearings in person was a clear and obvious error.

Regarding the third prong of the plain error analysis, we find that respondent has failed to establish that the error affected her substantial rights, which is to say, respondent has failed to show that the errors prejudiced the respondent by affecting the outcome. As this Court recognized in *Anderson*, "the Supreme Court has never held that the exclusion of a criminal defendant from a critical stage of his criminal proceedings constitutes a structural error." *Anderson*, ___ Mich App at ___; slip op at 6 (quotation marks and citation omitted). Therefore, to be entitled to relief, respondent must show that any plain error committed by the trial court affected her substantial rights. See *People v Walker*, 273 Mich App 56, 66; 728 NW2d 902 (2006); see also *Anderson*, ___ Mich App at ___; slip op at 7-8 (holding that defendant satisfied first two prongs of plain-error analysis but not the third). In *Anderson*, this Court found that a defendant who was sentenced via videoconference during the COVID pandemic established the first two prongs of plain-error analysis, but was unable to demonstrate prejudice. *Anderson*, ___ Mich App at ___; slip op at 7-8. There, this Court held that the defendant did not establish prejudice because aside from the proceedings occurring on video, he could not identify any other irregularities with the sentencing hearing. See *id.* at 8.

We conclude that respondent failed to satisfy the third prong of plain error analysis because use of two-way videoconferencing for testimony did not affect her substantial rights. Despite the

use of video technology, many procedural safeguards were available via video conference. Respondent was able to testify on her own behalf. She was able to cross-examine petitioner remotely. She was permitted to confer with her counsel in a video breakout room. Her counsel fully participated in the hearing and made several objections. The trial court gave respondent an opportunity to speak on her own behalf before rendering a sentence. Although there were small gaps in the transcript, it does not appear that the technology impeded the hearing. Respondent, for example, points to no time during the hearing when testimonies were misunderstood or when the participants asked clarifying questions of "indiscernible" testimony. Throughout the proceedings, the trial court asked respondent several times if she understood the proceedings and asked if she had questions. Relying on *Anderson*, we conclude that respondent has failed to satisfy the third prong of plain-error analysis: that the error affected her substantial rights and affected the outcome.

## III. CONCLUSION

For the reasons stated above, we find that respondent forfeited the issue of her physical presence at the trial and sentencing for contempt, and failed to establish that the trial court's plain error affected her substantial rights. We affirm.

/s/ Mark T. Boonstra
/s/ Michael F. Gadola
/s/ Noah P. Hood